UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) ) ) v. ) ) MUJAB MUBARAK ) ) | Criminal No. 20-MJ-05124-JGD 20-CR-10300-ADB |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S
### MOTION TO REVOKE ORDER ON DETENTION PENDING TRIAL

The defendant, Mujab Mubarak, in the above-numbered matter submits the instant memorandum in support of Defendant's Motion To Revoke Order On Detention Pending Trial and pursuant to Rule 7.1(D), respectfully requests that he be afforded a hearing on his motion.

**I.     Procedural History**

On August 5, 2020, a Complaint charging the defendant with _____ and an arrest warrant, were issued by this Court. The defendant was arrested on August 6, 2020 and has been since that date. On August 7, 2020, the defendant made his initial appearance in this Court and on August 17, 2020, while represented by prior counsel, he waived a probable cause and detention hearing. On August 31, 2020, the defendant's present counsel filed his appearance in this matter.

On September 2, 2020, an Assented To Motion For Ends Of Justice Continuance Or The Time For Filing An Indictment And Exclusion Of Time Under The Speedy Trial Act was filed with the Court. The said motion alleged, *inter alia*, that: "The parties have engaged in preliminary discussions regarding a plea. However, the defendant's just retained counsel, Bernard Grossberg on August 31, 2020. . . . Thus, the parties request a

1

4-week extension of time within which an indictment must be filed in this case in order to permit new counsel to review materials provided and to continue plea discussions with the government."  The Court, Talwani, J., issued an Order Of Continuance And Excludable Delay on September 3, 2020, stating that, "The parties have engaged in discussions regarding the case; however, even with due diligence, the parties expect to be unable to finalize their discussions prior to the time within which an indictment must be filed.  As a result, the United States requests an extension of time to return an indictment.  The requested extension of time represents an extension of the United States' time to file an indictment under the Speedy Trial Act."  The Court ordered that, "…the date on which an indictment must be filed was continued to October 17, 2020".  On October 7, 2020, the Defendant's Motion For Detention Hearing And Defendant's Proposed Release Conditions were filed with the Court.  On October 8, 2020, a Second Assented To Motion For Ends Of Justice Continuance Of Time For Filing Indictment And Exclusion Of Time Under Speedy Trial Act was filed with the Court.  The Court, Talwani, J., issued an Order Of Continuance And Excludable Delay, ordering that the date on which an indictment must be filed was continued to **November 17, 2020**.

On October 30, 2020, the defendant's counsel informed the government that the defendant did not accept the government's offer to resolve this matter short of indictment.  On that date, counsel for the government informed the defendant's counsel that, "the government withdraws any plea proposal that we have discussed and states that the proposals are thereby null and void".

On November 2, 2020, by means of Zoom, the defendant was afforded a preliminary/detention hearing.  The Court, Dein, Mag., J., found probable cause and after argument, took the issue of detention under advisement pending the Court's receipt and review of the defendant's medical records.  The defendant asserted that he was particularly vulnerable to contracting the COVID-19 virus at the Donald W. Wyatt Detention Facility and that given his very severe asthma and diabetes, his contracting the virus could be fatal.  The Court indicated that it wanted to review the defendant's medical records from the Boston Medical Center, however, counsel incurred problems in obtaining the records.  The delay in receiving the defendant's records appears to have been caused by the fact that he legally changed his name in 2007.  In addition, a first release furnished to the Boston Medical Center (BMC) did not include a definite start date for the records, which required the submission of a second release.  Subsequently, the defendant's counsel informed the Court of the problems he encountered in obtaining the defendant's records from the BMC and furnished the Court with a "medication list" of the medications prescribed to treat the defendant's severe asthma and reports regarding his conditions.

On the evening of November 25, 2020, the defendant was informed at Wyatt that he had tested positive for COVID-19 and he was transferred to a so-called quarantine unit. On November 27, 2020, an Emergency Motion For Immediate Release Of The Defendant was filed with the Court.  In his emergency motion, the defendant asserted that:

> The placement of the defendant in a quarantine unit does not serve a viable medial purpose and there are no means to treat him at the facility.  This is especially concerning since the defendant is extremely vulnerable to the effects of the virus given his severe asthma and diabetes.

3

> As proposed third-party custodian Djwan Scott testified at the defendant's detention hearing, she is an experienced nurse and nurse practitioner who has been involved in the treatment of patients suffering from COVID-19. Ms. Scott is familiar with the defendant's medial issues and has assisted him in the past when he incurred asthma attacks. Ms. Scott is aware that the defendant has tested positive and she continues to offer that she serve as a third-party custodian and that the defendant reside at her home. Ms. Scott resides alone at her home, which contains a separate bedroom and bathroom which the defendant can use while quarantined. Moreover, the defendant will have access to inhalers and a nebulizer should he suffer an asthma attack. Most crucially, Ms. Scott will be able to render medical treatment to the defendant as needed and transport him to a local hospital where she is employed. Given the defendant's severe asthma and diabetes, his release to Ms. Scott's home will best insure his safety while concomitantly providing security for his release under conditions.

On November 24, 2020, the defendant's Motion To Dismiss Complaint And For Immediate Release Of The Defendant was filed with the Court. On that date, the Indictment herein was returned by a grand jury. In a letter dated November 30, 2020, in response to the Court's inquiry, the defendant's counsel advised the Court that: "…I waive the introduction of the defendant's Boston Medical Center (BMC) records for the purpose of the Court adjudicating the Emergency Motion For The Immediate Release Of The Defendant, without prejudice subject to a motion for reconsideration and/or appeal should the Magistrate Judge order the defendant detained or should the emergency motion be denied." On November 30, 2020, the Government's Opposition To Defendant's Emergency Motion For Release was filed with the Court.

## II.     The Order On Detention

On December 2, 2020, the Court, Dein, Mag. J., issued an Order On Detention Pending Trial, a copy of which is attached hereto as Exhibit A. The Magistrate Judge ordered the defendant detained on two grounds:

> "By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community."

> "By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required."

In regard to the defendant having contracted COVID-19, the Order stated that the defendant:

> On November 30, 2020 filed an Emergency Motion For Immediate Release on the grounds that he has tested positive for COVID-19 and has been transferred to a quarantine unit (Docket No. 31). He is concerned that he will not receive appropriate medical care if needed. The defendant has reiterated his original proposal that he be released to Ms. Scott's home and that she serve as a third-party custodian. Ms. Scott has a separate bedroom and bathroom where the defendant can quarantine and the defendant believes that she can assist him if he suffers an asthma attack and can bring him to a hospital if necessary. (Docket No. 31) The government has filed an opposition (Docket No. 32)
>
> After careful consideration of the evidence and arguments of counsel, this court finds that the government has met its burden of proving by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person (including a confidential witness) and the community, and by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. While this court is very concerned about the defendant's health, the evidence before the court is that Wyatt is providing appropriate medical treatment to inmates. As of November 30, 2020, 23 detainees tested positive for COVID, and testing continues. The facility is following protocols established by the Rhode Island Department of Health and CDC. The facility has established procedures to provide the appropriate level of medical care needed. Moreover, the defendant has been incarcerated at Wyatt since August 2020, and there is no evidence that his medical needs, including any potential treatment for asthma or diabetes, have gone unmet. Therefore, the situation at Wyatt does not warrant the defendant's immediate release.

Upon being diagnosed with the virus, the defendant was transferred to a quarantine unit, at Wyatt and subsequently, transferred to the institution's hospital unit where he has received nebulizer treatments and steroids.

The Order On Detention does not discuss the defendant's proposed release conditions in depth or the reasons that the Court held that the combination of the proposed conditions proffered by the defendant, does not assure the safety of the

community, see, 18 U.S.C. §3142(e) and (g), or reasonably assure the defendant's appearance as required.  In regard to the defendant's unique medical condition of having contracted COVID-19 while incarcerated at Wyatt and suffering from severe asthma and diabetes, the Court assumed that the defendant's medical needs will be served at Wyatt without evidence of any nature that this is the case.  The fact that, "The facility has established procedures to provide the approximate level of medical care needed", (Detention Order at 3) does not address this defendant's medical status.  It is also irrelevant that in the past, prior to the defendant contracting COVID-19, that the defendant's medical needs were taken care of at Wyatt.  The issue that the Detention Order fails to address is the defendant's medical needs now that he has contracted the virus, which may be fatal given his medical issues.

### III.     **Standard For Pre-Trial Detention**

"In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  United States v. Salerno, 481 U.S. 739, 747 (1987).  The nature of a district court's inquiry regarding the grounds for detention relied on by the Magistrate Judge, was summarized in Untied States v. Salemme, 317 F. Supp. 2d 28, 42-43 (D.M.A. 2004) (citations and internal quotation marks omitted) as follows:

> With regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence that no combination of conditions will reasonable assure each defendant's appearance at future court proceedings.
>
> With regard to danger, however, there is a heightened standard of proof because of "the importance of the interests of the defendant which are implicated in a pretrial detention hearing." S.Rep. No. 225, 98th Cong., 2d Sess. 22, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3205.  Thus, clear and convincing evidence is required to establish the facts relied upon to support a finding that no combination of conditions will reasonably assure the safety of any other person or the community.

> Undoubtedly, the safety of the community can be reasonably assured without being absolutely guaranteed… [C]ourts cannot demand more than an 'objectively reasonable assurance of community safety.' Similarly, only reasonable assurances, rather than a guarantee, are required with regard to the risk of flight.
>
> As the First Circuit has recognized:
>
> In determining whether suitable conditions exist, a judicial officer [is] required to take into account the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt or innocence; (3) the history and characteristics of the accused, including past conduct; and (4) the nature and gravity of the danger posed by the person's release. *See 18 U.S.C. §3142(g)*.

See, also United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990) ("Undoubtedly, the safety of the community can be reasonably assured without being absolutely guaranteed… Requiring that release conditions *guarantee* the community's safety would fly in the teeth of Congress's clear intend that only a limited number of defendant's be subject to pretrial detention.") (emphasis added). In reviewing a Magistrate Judge's order of detention, "it is the duty of the district court to undertake an independent review of the case." United States v. DiGiacomo, 746 F. Supp. 1176, 1181 (D. Mass. 1990). The district court may consider the proffer made before the Magistrate, any new evidence presented by the defendant and new arguments of counsel. See, United States v. Shaker 665, F. Supp. 698, 704-705 (N.D. Ind. 1987). It is the duty of the district court to review the evidence and reach its own conclusions. United States v. Leon, 766 F.2d 77, 80 (2d Cir. 1985).

The Bail Reform Act of 1984 requires the release of persons facing trial under the least restrictive conditions that will reasonably assure the appearance of that person at trial. 18 U.S.C. §3142(c)(2). That individuals facing trial must be released on such conditions reflects the traditional principle that "[f]ederal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail." Stack v. Boyle,

7

342 U.S. 1, 4 (1951).  The command of the Eighth Amendment that, "Excessive bail shall not be required at the very least obligates judges passing upon the right to bail to deny relief only for the strongest of reasons."  Sellers v. United States, 89 S. Ct. 36, 38 (1968). Any doubt regarding the propriety of release should be resolved in favor of the defendant. Herzog v. United States, 75 S. Ct. 349, 351 (1955).

      The government's allegations in the instant case give rise to the rebuttable presumption codified at 18 U.S.C. §3142(e).  Under this section, a rebuttable presumption that no conditions or combination of conditions exist that will reasonably assure a defendant's appearance or the safety of the community where there is probable cause to believe that "the person committed an offense for which maximum term of imprisonment of ten years or more is prescribed in the Controlled Substance Act (21 U.S.C. 801 et. seq.).  Id.  Such a presumption, however, merely shifts the burden of production to the defendant to produce some evidence to the contrary.  United States v. O'Brien, 895 F.2d 810, 815 (1st Cir. 1990).  "The government retains the burden of production that no conditions will reasonably assure the defendant's appearance."  Id. at 815.  Once the defendant produces such evidence, the presumption serves as only a factor for the court's consideration in reaching a decision on detention.  Id.

      This Court may detain the defendant as posing a danger to the community only if it finds, by clear and convincing evidence, that no conditions or combination of conditions will reasonably assure the safety of any person or the community.  18 U.S. C. §3142.  Similarly, the Court may detain the defendant as posing a risk of flight only if it finds, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure his appearance.  Id.

**IV      The Defendant Does Not Pose A Danger To The Community Or A Flight Risk**

At the defendant's detention hearing, the government failed to demonstrate that the defendant posed a danger to the community, or a risk of flight warranting pre-trial detention. To the contrary, the facts clearly indicate that the defendant does not pose a danger to the community as demonstrated by the fact he has contracted COVID-19 and that he is in need of appropriate medical treatment. The only thing that the defendant will be physically and mentally able to do, if he is released, is to receive treatment. He could not and would not engage in criminal activities or abscond, as to do so would be to endanger his life. If released pending trial, not only will the defendant not be detained in a penal institution, where the issue of whether or not he will receive necessary treatment for COVID-19 with his medical problems is problematic, he will receive treatment and remain under strict provisions of supervision.

**V       The Defendant's Proposed Release Conditions**

Attached hereto as Exhibit B is the defendant's proposed release conditions. During the course of the defendant's detention hearing, in response to the Mag. Judge's inquiry, the defendant agreed to the further condition that in addition to failing to appear as required, his failing to comply with a release condition would constitute a violation of the terms of his release.

**VI      The Government Failed Sufficiently To Demonstrate That The Defendant Poses A Danger To The Community**

The government has failed sufficiently to demonstrate that the defendant poses a danger to the community or a risk of flight and that he should not be released on conditions.

> [W]ith respect to safety, in order to conclude that detention is necessary, a judicial officer must be convinced by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person(s) and the community.
>                                             18 U.S.C. §3142(f)

As the statute indicates, the standard employed by the Court in determining the efficacy of conditions of release is whether such conditions "reasonably assure" the community's safety.

> Undoubtedly, the safety of the community can be reasonably assured without being absolutely guaranteed.  Requiring that the release conditions guarantee the community's safety would fly in the teeth of Congress' clear intent that only a limited number of defendants be subject to pretrial detention.  Thus, we agree with the Eighth Circuit that <u>the courts cannot demand more than an 'objectively reasonable assurance of community safety</u>.
>                                 <u>United States v. Tortora</u>, 922 F.2d 880, 884 (1st Cir. 1993) (citations omitted) (emphasis added)

In the face of the critical fact that the government cannot prevail at trial without the introduction in evidence of the contraband seized as a result of two searches, where there is a highly meritorious issue that the search warrants for the respective searches substantially relied on stale assertions, the Magistrate Judge concluded that the defendant poses a danger to the community and a risk of flight.  Given the defendant's health status and the viability of a motion to suppress evidence essential to the government's case, the Magistrate Judge avoided the fact that the defendant has nothing to gain and everything to lose by absconding.  Moreover, pursuant to the proposed release conditions, surety in the form of bail in excess of $500,000.00 would be posted to insure not only the defendant's appearance, but also his compliance with all of the release conditions.

Although the Bail Reform Act allows the Court to consider the nature of the charges against a defendant as one factor in determining dangerousness to the

community, the presumption of innocence remains resolute. "[T]he statute neither requires nor permits a pretrial determination that the defendant is guilty. United States v. Motamedi, 767 F.2d 1403, 1408 (9th Cir. 1985). Consequently, at least one federal court has stated that "the weight of the evidence is the least important of the various factors." Id. In the instant case, however, it is therefore not simply the nature of the charge and the possibility of an enhanced sentence that must be considered by this Court, but more importantly, the strength of the government's case and the possibility of the defendant's conviction. In assessing whether or not the defendant should be detained or released on conditions, this Court must consider the fact that the government's case will be greatly diminished should the defendant's motion to suppress evidence be allowed. The defendant respectfully submits that this fact in itself should be afforded great weight in assessing whether or not the defendant should be released pending trial.

### VII     The Length Of Detention

A further factor that may be considered by this Court as weighing in favor of releasing the defendant on conditions pending trial, is the anticipated length of his pretrial detention. It is not uncommon in this district for cases to take at least 18 to 24 months for the case to reach trial. Furthermore, it is presumed that the need to litigate pre-trial issues will result in a pre-trial delay of at least a year. The fact that the courts have been closed because of the pandemic, will result in more than the usual delay in this case reaching trial. In certain circumstance, protracted pre-trial detention may violate a defendant's right to due process and constitutes another factor for consideration of whether or not to release a defendant on conditions pending trial. United States v. Zannino, 798 F2d 544, 548 (1st Cir. 1986), United States v. Orena, 986 F.2d 628 (2nd Cir. 1993); United States v.

Gelfuso, 838 F.2d 358, 360 (9th Cir. 1988); United States v. Gonzelez-Claudio, 806 F.2d 334, 339 (2nd Cir. 1986), cert. den. 479 U.S. 978, 107 S.Ct. 562 (1986); United States v. Aceetturo, 783 F.2d 382, 388 (3rd Cir. 1986).

## CONCLUSION

There is no valid reason to detain the defendant pending trial as he does not pose a threat to the community or a flight risk. To the contrary, there is every reason to revoke the Order On Detention and to release the defendant on the proposed conditions pending trial, especially given the fact that he contracted COVID-19 while detained at Wyatt. Given the fact that the defendant suffers from severe asthma and diabetes, if he does not receive necessary medical treatment, which is problematic for an inmate at Wyatt, his contracting the virus may be fatal. The issue for this Court is why expose him to that possibility when he may be released to the care of proposed third-party custodian Djwan Scott, who as a nurse practitioner is able to care for and treat the defendant while he resides in her home. Ms. Scott is a graduate of Howard University and earned degrees in nursing and as a nurse practitioner at UMass Lowell. She is licensed as both a nurse and nurse practitioner in the Commonwealth and she has cared for patients suffering from COVID-19. In the past, Ms. Scott helped care for the defendant when he incurred asthma attacks and she has a portable nebulizer, as well as, a flutter valve, for this purpose in her home. On numerous occasions, Ms. Scott transported the defendant to local hospitals when he required additional treatment. As a nurse practitioner, Ms. Scott is aware of the symptoms of breathing difficulties and she knows how to immediately administer aid should the defendant suffer such a problem. It is a fortuitous set of circumstances that Ms. Scott is agreeable to serving as a third-party custodian, providing the defendant with

a place to live and posting real property as surety. Ms. Scott testified at the detention hearing that she would report a violation of a release condition to the court regardless of her feelings for the defendant. Her belief that the defendant will fully comply with the proposed release conditions is evidenced by the fact that she will post two properties that she owns as surety. The properties include Ms. Scott's home at 11 Garden Road, Lowell, Ma, which has an appraised value of approximately $615,000.00 and a mortgage of $275,000.00 and a condominium located at 52 Lawrence Drive, Lowell, which has an appraised value of $280,000.00 and outstanding mortgage of $12,000.00. The equity in the two residences amounts to $543,000.00 (i.e. $275,000 + $268.00), which would be forfeited if the defendant fails to appear or violates a release condition.

The defendant was born in Boston and raised in Dorchester and Roxbury. His parents separated when he was age 15 and he stayed with his father after his mother moved to Virginia. After attending the Jeremiah Burke High School to the eleventh grade, the defendant earned a GED. The defendant has four children, ages 27, 22 and 20 years old twins, who reside in Boston with their mothers. He remains close with each of his children, their mothers and a young granddaughter. In 2006-2007, the defendant converted to Islam and legally changed his name. The government is aware of the defendant's prior name and there was no deception in his name change. The defendant's last arrest was on June 18, 2003, seventeen years ago. In regard to the sentence of 5 years and one day imposed on the defendant by the Suffolk County Superior Court, it must be noted that he was released on bail for about two years while the case proceeded and he self-surrendered on the day that he entered guilty pleas to the charges, fully aware that he would be incarcerated. During the course of serving that sentence, the defendant

was an exemplary inmate and remarkably, he did not incur even one disciplinary report. Although the defendant's record indicates several defaults, he never voluntarily failed to appear in court, but rather defaults were entered when he was held on other charges and not transported to court. The great majority of the defendant's prior charges involved motor vehicle offenses, most of which were eventually dismissed.

At about age 7 or 8, the defendant was diagnosed with severe asthma, which is more prevalent during the winter months as a result of being exposed to too much dry air. The defendant has always carried an inhaler with him and he is allowed to possess an inhaler at Wyatt. As an adult, the defendant suffered two or three asthma attacks each year which required hospitalization. This past New Year's eve, the defendant had an asthma attack which required his going to the emergency room of the Boston Medical Center. The fact that the defendant also has type 2 diabetes exacerbates his exposure to COVID-19.

Upon being diagnosed as having contracted COVID-19 at Wyatt, the defendant was placed in a quarantine unit and later transferred to the institution's hospital. He has been administered steroids and a nebulizer treatment, however, there is no social distancing at the institution and the defendant remains in a position where he can be re-infected even if he does not incur severe consequences from his present contraction of the virus. The only preventative measures at Wyatt at this time, is that inmates are given two masks per week and there is no social distancing.    The above described circumstances indicate that the defendant does not pose a danger to the community or a flight risk. If, however, this Court concludes that the defendant presents such risks, the government's proof must go further and demonstrate that no condition or combination of conditions

would assure the safety of any other person and the community.  United States v. Chimurenga, 760 F.2d 400 (2nd Cir. 1985).  The release conditions proposed by the defendant eliminate any possibility that the defendant would or could pose a threat.  Moreover, the proposed third-party custodian is a suitable custodian who would be in an opportune position to assist this Court in monitoring the defendant's compliance with his conditions of release.  Most crucially, the defendant would be under the close supervision of a medical professional.  The significant real property to be posed as surety by the third-party custodian to insure both the defendant's compliance with the conditions of his release and appearances before this Court, serves as an additional assurance that the defendant will not pose a threat to the community or of flight.  The proposed third-party custodian has a profound interest in assuring that the defendant observes all conditions of his release.  Ms. Scott would face great financial loss should the defendant not adhere to the proposed release conditions.

The electronic monitoring which the defendant has proposed as a condition of his release substantially rebuts both the presumption of flight and the ability of the defendant to be physically able to pose a risk to the community.  As the Court of Appeals for the First Circuit noted, the effectiveness of the bracelet alone arguably rebuts the presumption of flight.  United States v. O'Brien, 895 F.2d 810, 816 (1st Cir. 1990).

The only relevant factor for detention of the defendant pending trial is the statutory presumption; however, the conditions proposed by the defendant, combined with his medical needs, rebut the presumption implicated by 18 U.S.C. §3142(e) and renders the government's claims insufficient to justify the defendant's continued pretrial detention.  The current travel ban and the defendant's medical needs also indicate that he

will remain in the home of Ms. Scott to receive necessary medical treatment. Finally, although this Court may consider the nature of the charges pending against the defendant as one factor in determining dangerousness to the community, 18 U.S.C. §3142(g), the presumption of innocence remains resolute as "[t]he statute neither requires nor permits a pretrial determination that the defendant is guilty". United States v. Motamedi, supra at 1048 and "the weight of the evidence is the least important of the various factors." Id.

For the foregoing reasons, the defendant moves this Court to revoke the Order On Detention issued on December 2, 2020 by Magistrate Judge Dein and order that the defendant be released on the conditions proposed herein and on any other conditions that the Court deems just and appropriate.

Respectfully submitted
By his attorney,

/s/ Bernard Grossberg
_____
Bernard Grossberg
38 Green Street
Milton, MA 02186
(617) 737-8558
B.B.O. No. 212900

### CERTIFICATE OF SERVICE

I, Bernard Grossberg, Esq., hereby certify that on December 10, 2020, I served a true copy of **Memorandum In Support Of Defendant's Motion To Revoke Order On Detention Pending Trial** upon Assistant United States Attorneys Glenn McKinley and Philip Mallard, at the Office of the United States Attorney, One Courthouse Way, Boston, MA 02210, by electronically filing same to all registered users.

/s/ Bernard Grossberg
_____
Bernard Grossberg