UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MUJAB MUBARAK,<br><br>Defendant. | Criminal Action No. 20-cr-10300-ADB |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION
TO REVOKE ORDER ON DETENTION PENDING TRIAL**

BURROUGHS, D.J.

Defendant Mujab Mubarak seeks an order pursuant to 18 U.S.C. § 3145(b) revoking Magistrate Judge Dein's December 1, 2020 Order of Detention Pending Trial, [ECF No. 34], and requests that the Court release him pending trial, subject to specific conditions. [ECF No. 37].[1] For the reasons set forth below, Mubarak's motion is DENIED.

**I.   BACKGROUND**

On August 5, 2020, the Government filed a criminal complaint against Mubarak, alleging drug and gun offenses. [ECF No. 1]. Magistrate Judge Dein issued an arrest warrant, and shortly thereafter, Mubarak was arrested. [ECF No. 2; un-numbered docket entry dated Aug. 7, 2020 ("Arrest of Mujab Jihad Mubarak")]. On August 7, 2020, Mubarak made an initial appearance before Magistrate Judge Dein, and she ordered that he be detained pending a detention hearing scheduled for August 11, 2020. [ECF No. 5]. After the parties sought a short

---

[1] Mubarak requested a hearing on the motion pursuant to Local Rule 7.1(d). [ECF No. 38 at 1]. Whether to grant a hearing is within the Court's discretion. See Local Rule 7.1(e). The Court finds that the issues presented by the motion are sufficiently clear based on the parties' written submissions and that oral argument is not warranted.

continuance, Magistrate Judge Dein held the detention hearing on August 17, 2020, and Mubarak consented to the entry of an order of detention, but preserved his right to reopen the issue at a later date. [ECF No. 12 (clerk's notes from hearing); ECF No. 13 (detention order)]. Subsequently, Mubarak sought another hearing on detention, [ECF No. 17], and Magistrate Judge Dein held one on November 2, 2020, at which two witnesses testified and eighteen exhibits were admitted into evidence. [ECF No. 25]. Magistrate Judge Dein took the issue under advisement. [Id.]. On November 24, 2020, Mubarak was indicted on drug and gun charges.[2] [ECF No. 28]. On November 30, 2020, Mubarak filed an emergency motion for immediate release from custody, [ECF No. 31], which the Government opposed, [ECF No. 32]. Magistrate Judge Dein denied Mubarak's motion on December 1, 2020, ordering that Mubarak be detained pending trial. [ECF No. 34 at 3–4]. She concluded that the Government had demonstrated by "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" and had demonstrated by a "preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." [Id. at 2]. In support of her conclusion, Magistrate Judge Dein made the following findings:

> The defendant was originally charged in a criminal complaint, and was subsequently indicted and charged with conspiracy to distribute and possess with intent to distribute heroin, cocaine base and fentanyl in violation of 21 U.S.C. §§ 846, 841(b)(1)(B)(iii) & (iv); discharging, brandishing, using and carrying a firearm during and in relation to, or in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c); and being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). After initially consenting to the entry of a voluntary order of detention without prejudice, the defendant

---

[2] More specifically, he was charged with conspiracy to distribute and possess with intent to distribute heroin, cocaine base, and fentanyl (Count I), discharging, brandishing, using, and carrying a firearm during and in relation to, or in furtherance of a drug trafficking offense (Counts II and III), and being a felon in possession of a firearm and ammunition (Counts IV and V). [ECF No. 28].

subsequently filed a motion for a detention hearing and release.  A detention hearing was held remotely on November 2, 2020 at which time the government presented the testimony of FBI Agent Michael Little and the defendant presented the testimony of Djwan Scott, the defendant's ex-girlfriend who is a nurse. At the conclusion of the hearing the defendant requested time to assemble medical records to establish that he suffered from asthma and diabetes, conditions that made it more likely that he would become seriously ill if he contracted COVID-19.  The defendant has apparently been unable to assemble the medical records and on November 30, 2020 filed an Emergency Motion for Immediate Release on the grounds that he has tested positive for COVID-19 and has been transferred to a quarantine unit.  He is concerned that he will not receive appropriate medical care if needed.  The defendant has reiterated his original proposal that he be released to Ms. Scott's home and that she serve as a third-party custodian.  Ms. Scott has a separate bedroom and bathroom where the defendant can quarantine, and the defendant believes that she can assist him if he suffers an asthma attack and can bring him to a hospital if necessary.  The government has filed an opposition.

After careful consideration of the evidence and arguments of counsel, this court finds that the government has met its burden of proving by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person (including a confidential witness) and the community, and by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.  While this court is very concerned about the defendant's health, the evidence before the court is that Wyatt is providing appropriate medical treatment to inmates.  As of November 30, 2020 23 detainees tested positive for COVID, and testing continues.  The facility is following protocols established by the Rhode Island Department of Health and CDC.  The facility has established procedures to provide the appropriate level of medical care needed.  Moreover, the defendant has been incarcerated at Wyatt since August 2020, and there is no evidence that his medical needs, including any potential treatment for asthma or diabetes, have gone unmet.  Therefore, the situation at Wyatt does not warrant the defendant's immediate release.

\*       \*       \*

At the detention hearing the government introduced 18 exhibits in support of its contention that Mubarak, along with Karim Muwakkil and Vito Gray, were engaged in the business of purchasing and distributing large quantities of fentanyl, heroin and cocaine.  In 2017, Mubarak shot Gray over a dispute relating [to] the loss of drug proceeds that Gray was transporting, and confessed to the shooting [of Gray] to a cooperating witness.  There is a recording of this confession.  There was evidence of approximately 25 controlled buys during the government's lengthy investigation.  At the time of Mubarak's arrest, a search of his truck revealed a firearm and ammunition.  A search of his residence revealed over $24,000 in cash, a money counter, drug ledgers, a press, and drug packaging materials among other

> evidence of drug trafficking. At Ms. Scott's home, where the defendant was living, agents found $300,000 in cash, 2 motorcycles belonging to the defendant, and an unsecured firearm and ammunition belonging to Ms. Scott.
>
> Mubarak, age 47, is a life-long resident of Massachusetts. He has four children who reside with their mothers and with whom he maintains contact. He travels domestically and internationally. Prior to his incarceration on August 6, 2020 he was employed through Local 175 in Methuen, MA for two years, prior to which he worked as a laborer on and off in odd jobs. Despite this lack of lucrative employment, as noted above searches of the defendant's residence and the residence of Ms. Scott with whom he was living at the time of his arrest revealed substantial amounts of cash.
>
> Mubarak has an extensive criminal history beginning at age 14. He has adult convictions for, inter alia, trafficking controlled substances for which he received a 5 year committed sentence (2003), resisting arrest (2003), motor vehicle violations (2002), possession class D (marijuana) (1999), carrying a dangerous weapon (1996), manufacturing a controlled substance (1995), possession with intent to distribute class A (heroin) (1994) and assault and battery on a police officer (1993). His record is replete with defaults. The defendant apparently legally changed his name in 2006–07, so it is unclear whether this criminal record is complete.
>
> Despite extensive interactions with law enforcement, the defendant has been unable to conform his behavior to the requirements of the law. In light of the defendant's use of firearms and his participation in drug trafficking, the danger to the community is very great if he were to be released. In addition, given the potential lengthy sentence the defendant is facing, and his history of defaults, the risk that the defendant will not appear for trial is also very great.

[Id. at 4 (citations omitted)].

On December 10, 2020, Mubarak filed the instant motion, seeking to revoke Magistrate Judge Dein's December 1, 2020 Order and requesting that he be released pending trial, subject to specific conditions. [ECF No. 37]. The Government opposed on January 18, 2021. [ECF No. 48].

## II.     LEGAL STANDARD

"Under the Bail Reform Act, 18 U.S.C. § 3142, release of a defendant is warranted if there are conditions of release that will reasonably assure the defendant's appearance and the safety of others and the community." United States v. McForbes, 109 F. Supp. 3d 365, 366–67

4

(D. Mass. 2015). Conversely, "[i]f, after a hearing . . . , the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e).

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
>> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>>
>> (2) the weight of the evidence against the person;
>>
>> (3) the history and characteristics of the person, including—
>>
>>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>>
>>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>>
>> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b). When the Court conducts such a review, it "must engage in *de novo* review of the contested order." United States v. Diaz, 456 F. Supp. 3d 320, 322 (D. Mass. 2020) (citing United States v. Oliveira, 238 F. Supp. 3d 165, 167 (D. Mass. 2017)). The Court need not, however, conduct a hearing. United States v. Pierce, 107 F. Supp. 2d 126, 127 (D. Mass. 2000)

("Section 3145(b) of Title 18 does not provide for a hearing as a matter of right and this Court declines to grant one."). "Where, as here, a court examines the detention order without taking new evidence, a degree of deference to the factual determinations of the Magistrate tempers the independent review." McForbes, 109 F. Supp. 3d at 367 n.2 (first citing United States v. Tortora, 922 F.2d 880, 882–83 (1st Cir. 1990); then citing United States v. Simone, 317 F. Supp. 2d 38, 42 (D. Mass. 2004)).

### III.   DISCUSSION

The Court has reviewed the evidence submitted to Magistrate Judge Dein and agrees with her well-reasoned conclusion that pretrial detention for Mubarak is appropriate.

With regard to the first § 3142(g) factor, the currently pending charges are serious and involve controlled substances, firearms, and a threat of violence. Mubarak is charged with trafficking large quantities of fentanyl, heroin, and cocaine. [ECF No. 28 at 1–3]. The evidence before the Court suggests that Mubarak was a high-ranking member of his drug-dealing organization and that a great deal of money and drugs were changing hands at his direction. See, e.g., [ECF No. 48-4 at 1 (Mubarak noting that members in the organization "should be having 10, 20 thousand dollar days" dealing drugs); ECF No. 48-3 at 10 (coconspirator noting that he is "a man of rank" and that Mubarak is his "boss")]. He is also charged with firearms offenses, including possessing and/or brandishing multiple guns, and has admitted to shooting an associate in 2017. [ECF No. 28 at 4–7 (indictment indicating firearm charges); ECF No. 48-2 at 1, 16–18 (transcript of confession)].

Further, the case against Mubarak is strong. See 18 U.S.C. § 3142(g)(2). As Magistrate Judge Dein noted, see [ECF No. 34 at 4], a confidential witness made approximately two dozen controlled buys from members of the organization with which Mubarak is affiliated during the

course of the Government's investigation, [ECF No. 48-1 ¶¶ 17–19].  Mubarak's admission that he shot a co-conspirator, in connection with a drug-related dispute, is captured on video, [ECF No. 48-2 at 16–18], as are other inculpatory statements, e.g., [ECF No. 48-4 at 1 (Mubarak noting that members in the organization "should be having 10, 20 thousand dollar days" dealing drugs)].  Additionally, the Government's searches of Mubarak's truck and home, and the home of his ex-girlfriend, with whom he was living at the time of the search, resulted in the seizure of guns, drug paraphernalia, and significant amounts of cash.  [ECF No. 48-5 at 3, 5–8 (photos of drug ledger and firearm found in Mubarak's truck); ECF No. 48-6 at 5–6 (photos of ammunition found in Mubarak's home); ECF No. 48-7 at 3–5, 9, 11 (photos of cash, a drug ledger, and a money counter found in Mubarak's home); ECF No. 48-12 at 2–4 (photos of scales and a puck press[3] found in Mubarak's home); ECF No. 48-14 at 3–4 (photos of $300,000 in cash found in Mubarak's ex-girlfriend's home); ECF No. 48-15 at 3–4 (photos of loaded gun in Mubarak's ex-girlfriend's home)].

As to the third and fourth § 3142(g) factors, Mubarak's personal history and characteristics and the danger that he poses to the community, Mubarak has a lengthy criminal history involving both gun and drug convictions.  [ECF No. 48-1 ¶ 14].  He seemingly does not have steady employment and certainly not employment that would explain the funds found during the searches in this case.  See [ECF No. 34 at 4].  Mubarak has meaningful ties to the community, but he also has a history of failing to appear at court proceedings.  See [id.].  With regard to the fourth § 3142(g) factor, given his persistent involvement with drugs and firearms,

---

[3] A puck press is a device that can be used to pack drugs in powder form into a solid, puck-shaped mass.  See Commonwealth v. Mallory, No. 17-cr-00269, 2017 WL 6568220, at *3 (Pa. Super. Ct. Dec. 26, 2017).

7

including actually shooting someone, the danger he poses to the community is serious.  All told, the § 3142(g) factors amply support Magistrate Judge Dein's conclusion.

In support of his motion, Mubarak argues that (1) because he has COVID-19 and underlying medical conditions that make him more vulnerable, he needs appropriate medical treatment and that, given his medical situation, "[t]he only thing that [he] will be physically and mentally able to do, if he is released, is to receive [such] treatment," [ECF No. 38 at 9], (2) because he will likely prevail on a motion to suppress, he has "nothing to gain and everything to lose by absconding," [id. at 10], and (3) he should be released because his trial is unlikely to occur for at least a year, [id. at 11–12].

First, while the Court, like Magistrate Judge Dein, is sensitive to Mubarak's health concerns, neither Mubarak's health conditions nor the situation at the facility where he is being held (Wyatt Detention Facility) warrant pretrial release in light of the factors discussed above. By all accounts, the Bureau of Prisons has done an adequate job of dealing with the COVID-19 pandemic, and the fact that Mubarak has underlying conditions and tested positive nearly two months ago, [ECF No. 38 at 3], does not undercut the Court's conclusion regarding pretrial detention.[4]

Second, there is no suppression motion pending, and the Court is unwilling to accept Mubarak's word that he is likely to prevail on such a motion if and when it is filed. Additionally, the Court notes that even if the "contraband seized as a result of the two searches" is suppressed, as Mubarak argues it should be, [ECF No. 38 at 10], there is still significant evidence regarding Mubarak's guilt on the charged offenses and his use of the firearm.  E.g.,

---

[4] The Court has reviewed Mubarak's medical records, which were filed under seal, [ECF No. 47], and its review of those records does not affect its conclusion regarding the appropriateness of pretrial detention.

[ECF No. 48-2 at 16–18 (videotaped confession of shooting); ECF No. 48-1 ¶¶ 17–19 (evidence of controlled buys)].

Third, as the Government correctly points out, the anticipated length of any pretrial detention is an issue best adjudicated in the context of the Speedy Trial Act, 18 U.S.C. § 3161–74, not in the context of a motion for revocation of a detention order under 18 U.S.C. § 3145(b).  United States v. Digiacomo, 746 F. Supp. 1176, 1882 (D. Mass. 1990) ("It is, however, 'the Speedy Trial Act, 18 U.S.C. 3161 *et seq.*, not the preventive detention provision of the Bail Reform Act [that] is the vehicle chosen by Congress to regulate the length of pretrial delays for both detained and undetained defendants.'" (alteration in original) (quoting United States v. Accetturo, 783 F.2d 382, 387 (3d Cir. 1986))).

## IV.    CONCLUSION

For the reasons stated above, Magistrate Judge Dein's conclusion was well-reasoned and amply supported by the evidence before her, and upon *de novo* review, the Court agrees that pretrial detention is warranted.  Defendant's motion, [ECF No. 37], is therefore DENIED.

**SO ORDERED.**

January 25, 2021                                                              /s/ Allison D. Burroughs
                                                                              ALLISON D. BURROUGHS
                                                                              U.S. DISTRICT JUDGE