UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 20-cr-10300-ADB |
| ) | |
| MUJAB MUBARAK ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant, Mujab Mubarak, submits this memorandum in support of the jointly recommended sentence of 120 months of incarceration followed by 48 months of supervised release. This sentence, which is jointly recommended by the parties pursuant to a Rule 11(c)(1)(C) agreement, is sufficient, but not greater than necessary, to comply with the purposes enunciated by Congress in 18 U.S.C. § 3553(a).

**Mujab Mubarak's Background**

Mr. Mubarak was born in Boston and grew up in Dorchester. He was raised there alongside his siblings by their parents. Mr. Mubarak had loving and supportive parents who provided for him and his siblings. He had a strong relationship with his parents throughout his life. Mr. Mubarak maintains regular contact with his mother. Unfortunately, Mr. Mubarak's father passed away last year while he was incarcerated due to complications of COVID-19 and cancer. Mr. Mubarak has also forged close relationships with his three sisters, all of whom now live out of state but still keep in touch with him. His oldest sister described Mr. Mubarak as someone who is always there for his family and does his best to provide for them. She also noted that he is a dedicated father who she hopes will get a second chance at life when this case is behind him.

Mr. Mubarak is the proud father of four children. His children are one of the greatest

1

sources of joy in his life. They remain supportive of him despite his current circumstances. He looks forward to being able to spend more time with them when he is released from custody. Mr. Mubarak especially wishes to spend time with his grandchild, who is now six years old, when he concludes his sentence. Mr. Mubarak will fortunately have the love and support of his family to help him reintegrate into the community following his imprisonment.

Mr. Mubarak acknowledges that he has had a history of substance abuse issues throughout his life. This included frequent use of alcohol and prescription medication up to the time of his arrest. Substance use negatively impacted Mr. Mubarak throughout his life, oftentimes making it difficult for him to attend work due to withdrawal symptoms. He recognizes that in order to live a healthy and fulfilling life, he needs to address his substance use problems. Mr. Mubarak, who has never undergone substance abuse treatment, has expressed interest in obtaining counseling while in federal custody. He has also indicated he would like to participate in the Residential Drug Abuse Program, which probation states he is an appropriate candidate for. To that point, he urges the Court to make a recommendation to the Bureau of Prisons that he participate in the program.

## Procedural History

Mr. Mubarak was charged by way of a criminal complaint on August 5, 2020. An indictment was returned on November 24, 2020 charging him with (1) conspiracy to distribute and possession with intent to distribute heroin, cocaine base, and fentanyl; (2) and (3) discharging, brandishing, and carrying a firearm in relation to or in furtherance of a drug trafficking offense; (4) felon in possession of a firearm; and (5) felon in possession of ammunition. A superseding indictment was issued on November 3, 2022. The superseding indictment alleged five predicate offenses on the felon in possession counts under 18 U.S.C. §

924(e)(1). The government filed a superseding information pursuant to 21 U.S.C. § 851 on February 2, 2023.

The parties reached a plea agreement pursuant to Rule 11(c)(1)(C). (ECF #143). Under the terms of the agreement, the parties agreed that Mr. Mubarak would plead guilty to counts one and three in exchange for the government's dismissal of the remaining counts. The parties also agreed to a term of incarceration of 120 months to be followed by 48 months of supervised release.[1] Mr. Mubarak additionally agreed to forfeit large sums of money, motor vehicles, and jewelry. On March 3, 2023, Mr. Mubarak pled guilty to counts one and three. This Court accepted Mr. Mubarak's guilty pleas and stated it would also accept the plea agreement. The government then filed a motion to withdraw the 21 U.S.C. § 851 information, which the Court allowed. (ECF #141). Mr. Mubarak has been incarcerated at Wyatt during the entirety of the pretrial proceedings.

## An Appropriate Sentence

Mr. Mubarak joins the government in objecting to probation's calculation of the offense level as 33. The difference between probation's calculation and that described in the plea agreement is based on the drug weight. Under the terms of the plea agreement, the government agreed to take the position that the offense level is 29. Mr. Mubarak agreed that he was responsible for at least 100 grams of heroin. If the Court agrees with the offense level proposed by the government in the plea agreement, the recommended sentence is within the guideline range. If, on the other hand, the Court agrees with probation, the recommendation represents a downward variance from the guidelines. As described below, the joint recommendation is

---

[1] The original plea agreement called for an agreed sentence of 132 months. (ECF #133). Following further negotiations, the government amended the agreement to reflect a sentence of 120 months.

justified regardless of the final offense level computation.

As the Court appreciates, the advisory guideline sentencing range is the "starting point and the initial benchmark" but it is not the only consideration in the sentencing analysis. *Gall v. United States*, 552 U.S. 38, 49 (2007). There is no presumption that a guideline range is reasonable. *Id*. at 50. The Court must ultimately "make an individualized assessment based on the facts presented." *Id*. The Court must conduct a case-by-case analysis, "the hallmark of which is flexibility." *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008). The overarching goal is to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id*. (quoting *Gall*, 552 U.S. at 52). The factors enunciated in 18 U.S.C. § 3553(a) must be considered when imposing a sentence. An examination of some of these factors supports the joint sentencing recommendation.

I. <u>The Nature and Circumstances of the Offense and Characteristics of the Defendant</u>

This Court is well aware of the nature of the offenses Mr. Mubarak has pled guilty to. They need not be discussed at great length here. As noted in the PSR, Mr. Mubarak regrets the decisions he made that led him before this Court. To that point, he intends to use the time he will spend in prison to reflect on his actions to avoid repeating them in the future.

The Court should give consideration to Mr. Mubarak's age and health when sentencing him. While he is only 50 years old, he is of an age when the difficulties of imprisonment begin to take a greater toll. Regardless of the length of his sentence, Mr. Mubarak will be considered an elderly prisoner.[2] "While being old should not be an automatic get-out-of-jail-free card, infirmity

---

[2] The National Institute of Corrections, correctional experts, and criminologists mark 50 years of age as the appropriate age determining when a prisoner is "aging" or "elderly." See "At America's Expense: The Mass Incarceration of the Elderly," American Civil Liberties Union

4

and illness can change the calculus of what justice requires."[3] Research has shown that elderly prisoners, "even if they are not suffering illness, can find the ordinary rigors of prison particularly difficult because of a general decline in physical and often mental functioning which affects how they live in their environments and what they need to be healthy, safe, and have a sense of well-being. In addition to the memory loss and other ordinary cognitive impairments that can come with aging, older prisoners sooner or later will develop decreased sensory acuity, muscle mass loss, intolerance of adverse environmental conditions, dietary intolerance, and general vulnerability [which] precipitate collateral emotional and mental health problems."[4] Moreover, incarceration "compounds existing health issues and heightens the risk of further health problems, [and also] causes incarcerated people to age at a much faster rate than people in the community. The phenomenon of 'accelerated aging,' … means that the body of an incarcerated 50-year-old often has a 'physiological age' that is 10 to 15 years older."[5] Mr. Mubarak is likely to spend a large portion of his 50s incarcerated. As such, he is likely to experience the negative impacts of aging in prison that are described in these studies. Incarcerating him any longer than what the parties propose would only exacerbate these concerns.

---

Report, June 2012, at p. v, accessible at
https://www.aclu.org/files/assets/elderlyprisonreport_20120613_1.pdf

[3] Fellner, Jamie, "Graying Prisoners," *The New York Times*, Op-Ed, August 18, 2013, accessible at http://www.nytimes.com/2013/08/19/opinion/graying-prisoners.html?_r=1&

[4] "Old Behind Bars: The Aging Prison Population in the United States," Human Rights Watch Report, 2012 at p. 45, accessible at
https://www.hrw.org/sites/default/files/reports/usprisons0112webwcover_0_0.pdf (internal quotations omitted).

[5] "The High Costs of Low Risk: The Crisis of America's Aging Prison Population," The Osborne Association, 2018 at p. 22, accessible at
https://www.osborneny.org/assets/files/Osborne_HighCostsofLowRisk.pdf

Compounding the general concerns described above, Mr. Mubarak has existing health conditions that will need to be closely managed while he is in prison. These health conditions are outlined in paragraph 168 of the PSR. It is unlikely that the rigors of incarceration will improve Mr. Mubarak's health as he continues to age. The jointly recommended sentence offers Mr. Mubarak the opportunity to leave prison with many years of productive life left to him.

II.     The Need for the Sentence Imposed to Reflect the Seriousness of the Offense

A ten-year term of incarceration is by no means insignificant. As described in the preceding section, Mr. Mubarak will be incarcerated throughout most of his 50s. This is an age when many Americans are beginning to look towards retirement and seeing their children start families of their own. For Mr. Mubarak, however, he will instead have to look forward to being released from prison and watch his children and grandchild grow up from afar. It is a serious penalty for any person, let alone someone in Mr. Mubarak's circumstances. The penalty is consistent with the offenses for which he has been convicted.

III.    The Need to Avoid Unwarranted Sentencing Disparities

It is worth considering the sentence given to Mr. Mubarak's alleged second-in-command, Abdul-Karim Muwakkil. The majority of the controlled drug purchases conducted by the cooperating witness in this case were done by Mr. Muwakkil. Mr. Muwakkil was responsible for 18 of the transactions. He was arrested in August 2018 and charged with multiple counts of conspiracy to distribute, possession with intent to distribute, and distribution of narcotics. *See United States v. Muwakkil*, Crim. No. 1:18-cr-10296-PBS. Mr. Muwakkil ultimately reached a plea agreement with the government wherein the parties jointly recommended that he serve 60 months of incarceration. (ECF #29). The Court (Saris, J.) imposed the agreed recommendation on April 30, 2019. (ECF #42).

Mr. Mubarak's plea agreement calls for him to receive a sentence that is twice as long as that given to Mr. Muwakkil. This is reflective of his role in the offenses. Anything greater than double Mr. Muwakkil's sentence would be unduly harsh given the facts of the cases.

## Conclusion

For the foregoing reasons, Mr. Mubarak urges the Court to impose the agreed upon sentence of 120 months incarceration followed by 48 months of supervised release.

In order to be close to his family, Mr. Mubarak requests that the Court make a recommendation to the Bureau of Prisons that he serve his sentence in the northeastern part of the United States.

MUJAB MUBARAK
By his attorneys,
J. W. CARNEY, JR. & ASSOCIATES

*J. W. Carney, Jr.*
J. W. Carney, Jr.
B.B.O. # 074760

*Daniel J. Gaudet*
Daniel J. Gaudet
B.B.O. # 688120

20 Park Plaza, Suite 1405
Boston, MA 02116
617-933-0350
DGaudet@CarneyDefense.com

May 28, 2023

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

*Daniel J. Gaudet*
Daniel J. Gaudet

7